**Court of Appeal No. 25-7104**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CHINO VALLEY UNIFIED SCHOOL DISTRICT
BOARD OF EDUCATION, *et al.*,

*Defendants-Appellants,*

*vs.*

FREEDOM FROM RELIGION, *et al.*,

*Plaintiffs-Appellees*

_____

*Appeal from the Order of the United States District Court for the
Central District of California,*

*Case No. EDCV 14-2336-JGB
The Honorable Jesus G. Bernal., District Judge*

_____

**APPELLANTS' REPLY BRIEF**

_____

ADVOCATES FOR FAITH & FREEDOM
Robert Tyler, CA Bar No. 179572
btyler@faith-freedom.com
Joel Oster, Kansas Bar No. 18547
joster@faith-freedom.com
Julianne Fleischer, CA Bar No. 337006
jfleischer@faith-freedom.com
25026 Las Brisas Road
Murrieta, California 92562
Tel:  (951) 600-2733

*Counsel for Appellants*

# TABLE OF CONTENTS

Page(s)

TABLE OF CONTENTS ........................................................................... 2

TABLE OF AUTHORITIES ...................................................................... 3

I.      INTRODUCTION ......................................................................... 6

II.     THE SCHOOL DISTRICT'S RULE 60 MOTION WAS  FILED WITHIN A REASONABLE TIME........................................................................ 7

        A.      The Time Interval Of Three Years Is Consistent With Previous Cases 7

        B.      Plaintiffs Have Shown No Harm.......................................... 10

        C.      The Court Below Erred By Applying An "Exact Analogue Test" ..... 11

III.    THE PROPER TEST ASKS WHETHER THE  CONDUCT IS CONSISTENT WITH HISTORY ................................................ 15

IV.     CONCLUSION ............................................................................ 19

CERTIFICATE OF COMPLIANCE.................................................... 20

CERTIFICATE OF SERVICE............................................................. 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Agostini v. Felton*,
521 U.S. 203 (1997)..................................................................6, 7
*Associated Builders & Contractors v. Mich. Dept. of Lab. and Econ. Growth*,
543 F.3d 275 (6th Cir. 2008)................................................... 8
*Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*,
457 U.S. 853 ............................................................................. 8
*Bd. of Ed. of Westside Community Sch. v. Mergens*,
496 U.S. 226 .............................................................................14
*City of Madison v. Wisconsin Employment Relat. Comm.*,
429 U.S. 167 ............................................................................. 9
*District of Columbia v. Heller*,
554 U.S. 570 (2008)..................................................................15
*Elrod v. Burns,*
427 U.S. 347 (1976).................................................................. 9
*Flint v. Dennison*,
488 F.3d 816 (9th Cir. 2007)................................................... 9
*Freedom from Religion Found. v. Chino Valley Unified Sch. Dist.*,
896 F.3d 1132 ...........................................................................12
*Good News Club v. Milford Central School*,
533 U.S. 98 (2001)................................................................... 9
*Henson v. Fidelity Nat'l Financial, Inc.*,
943 F.3d 434 (9th Cir. 2019).................................................10
*Kennedy v. Bremerton School District*,
597 U.S. 507 (2022)................................... 6, 7, 12, 13, 14, 15
*Lee v. Weisman*,
505 U.S., 577 ....................................................................13, 14
*Marsh v. Chambers*,
463 U.S. 783 .............................................................................17
*McKinney v. Boyle*,
447 F.2d 1091 (9th Cir. 1971)................................................ 8
*Morse-Starrett Prods. Co. v. Steccone*,
205 F.2d 244 (9th Cir. 1953)................................................. 8
*New York State Rifle & Pistol Association, Inc. v. Bruen*,
597 U.S. 1 (2022)..................................................7 12, 15, 16

*Pasadena City Bd. of Ed. v. Spangler*,
   427 U.S. 424 (1976)................................................................. 7
*Pleasant Grove City, Utah v. Summum*,
   555 U.S. 460 (2009)................................................................. 9
*Rufo v. Inmates of Suffolk Cnty. Jail*,
   502 U.S. 367 (1992)................................................................. 7
*Town of Greece v. Galloway*,
   572 U.S. 565. ................................................... 12, 13, 14, 17, 18
*Twentieth Century-Fox Film Corp. v. Dunnahoo*,
   637 F.2d 1338 (9th Cir. 1981)................................................. 8
*United States v. Holtzman*,
   762 F.2d 720 (9th Cir. 1985)................................................. 8
*United States v. Rahimi*,
   602 U.S. 680 (2024)............................................................15, 16
*Zorach v. Clauson*,
   343 U.S. 306 (1952)............................................................13

Other Authorities

A. Amar, The Bill of Rights: Creation and Reconstruction xiv, 223, 243 (1998))  16

Board of Education, Boston: William B. Fowle and N. Capen (1845) ..................16

A History of the Public Schools of North Carolina, M.C.S. Noble, Chapel Hill:
   The University of North Carolina Press (1930) ................................17

J. Ross Browne, *Report of the Debates in the Convention of California, on the
   Formation of the State Constitution, in September and October, 1849*
   (J.T. Towers 1850) ................................................................17

*Napa County Teachers' Institute Proceedings*, The California Teacher,
   July 1870 ................................................................18

*Proceedings of the First State Conv. of the Col. Citizens of the State of
   California* (Democratic State Journal Print 1855) ...........................17

*Proceedings of the Board of Regents of Normal Schools and the Regulations
   Adopted at Their* First Meeting Held at Madison, July 5, 1875, Madison: At-
   wood & Rublee (1857) ................................................................17

Rosalita, Sister Mary, Education in Detroit Prior to 1850, Lansing: Michigan
Historical Commission (1928) ...............................................................................17

*Siskiyou County* Teachers' *Institute Proceedings*, *The California Teacher*,
July 1871 ................................................................................................................18

Sixth Annual Report of the Superintendent and Secretary to the Board of
St. Louis Public Schools, St. Louis: E.P. Stedley and Co., Printers (1860) .......16

Statutes of the State of New York Relating to Common Schools, Albany:
C. Van Benthuysen (1847) ...................................................................................17

The Common School Journal for the Year 1845, Volume VII, Edited by Horace
Mann, Secretary of the Massachusetts..................................................................16

Triumph of Equal School Rights in Boston: Proceedings of the Presentation
Meeting held in Boston, Dec. 17, 1855 (1856) ...................................................16

## I. INTRODUCTION

The permanent injunction that is the subject of this Rule 60 motion is an injunction that restrains speech in perpetuity. The legal principles on which this injunction was based, the *Lemon* test, have since been overturned by the U.S. Supreme Court in *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022). The replacement test adopted by the U.S. Supreme Court, a historical test, has yet to be properly applied in this case. Just as the defendant did in *Agostini v. Felton*, 521 U.S. 203, 218, 237 (1997), the School District is seeking relief from a permanent injunction because the law upon which it was based is no longer good law.

Plaintiffs argue that this permanent injunction should nonetheless not be disturbed as the School District filed the instant motion three years after the Supreme Court announced that the *Lemon* test was no longer to be followed. This argument is a red herring. The interval between when the Supreme Court overturned *Lemon* and this motion is similar to the interval in *Agostini* (three years). There, the Supreme Court granted a Rule 60 motion to give the defendant relief from a twelve-year-old permanent injunction where the law upon which it was based was overturned.

Plaintiffs have offered no evidence of detrimental reliance on the three-year interval. They claim that they had to retain new counsel yet offered no dates as to when their previous counsel withdrew.[1] But even so, this case has a limited factual record that is fully contained in the previous appellate filings. Having to retain new counsel is not prejudicial in this context, and most certainly does not counsel in favor of allowing a permanent injunction that operates as a prior restraint on speech to continue in perpetuity when the law upon which it is based has been overturned.

---

[1] In addition, the Freedom From Religion Foundation has been on this case since the beginning, and they have an entire team of lawyers at their disposal. *See https://ffrf.org/misc/legal/.*

The lower court did not apply the proper historical test but applied an "exact analogue test." The historical test is not meant to require finding a perfect historical match to the current practice. Rather, "In place of *Lemon* and the endorsement test, this Court has instructed that the Establishment Clause must be interpreted by 'reference to historical practices and understandings.'" *Kennedy* 597 U.S. at 535; *See also New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 17 (2022) ("Rather, the government must demonstrate that the regulation is *consistent* with this Nation's historical tradition of firearm regulation.") (emphasis added).

The permanent injunction was entered after the previous courts applied an "exact analogue test" and found differences between legislative prayers and prayers to open school board meetings. A proper historical test would have been to ask, "*is opening up a school board meeting with prayer consistent with our nation's history of opening up public meetings with prayer?*" The lower court did not apply this historical test and then entered the permanent injunction after applying *Lemon.*

## II. THE SCHOOL DISTRICT'S RULE 60 MOTION WAS FILED WITHIN A REASONABLE TIME

### A. The Time Interval Of Three Years Is Consistent With Previous Cases

The time between the issuance of the permanent injunction, the law being overturned in *Kennedy*, and the filing of the Rule 60 Motion is consistent with similar cases. *See* 597 U.S. at 507; *Agostini v. Felton*, 521 U.S. at 218, 237 (deciding that Establishment Clause law had significantly changed warranting petitioners' relief under Rule 60(b)(5) three years after law had changed, twelve years since injunction entered); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367 (1992) (hearing Rule 60 motion brought ten years after the Supreme Court decision that it claimed modified and warranted a modification to the prospective relief); *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 437–438 (1976) (motion filed in 1974 led the Court

7

to hold injunction should have been vacated due to 1971 Supreme Court holding in *Swann*); *U.S. v. Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (allowing a motion to vacate a permanent injunction filed six years after the final judgement); *Associated Builders & Contractors v. Mich. Dept. of Lab. and Econ. Growth*, 543 F.3d 275, 278–79 (6th Cir. 2008) (delay of two or more years was reasonable in seeking relief from permanent junction).

There is nothing unreasonable about a deliberative body taking the proper time to evaluate a matter, consider it, seeking counsel and act upon it. In addition, deliberative bodies do not meet every day, but usually once per month. No matter how one chooses to do the math, a time lapse of three years for a deliberative body to fully consider an issue is not unreasonable as established by common sense and caselaw.

School boards are "uniquely local and democratic institutions." *Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 894 (J. Powell, dissenting). School boards are made up of individuals who are accountable to the constituency; individuals who choose policies, and take actions based on their own preferences and political leanings. *See id.* The cases cited by Plaintiffs where the court found undue delays, involved moving parties that sat on their hands when their self-interest counseled in favor of action. *See* Response, at 32 (laying forth cases regarding corporations and individuals who failed to provide any reason for delaying bringing their Rule 60 motion) (citing *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338 (9th Cir. 1981)*; Morse-Starrett Prods. Co. v. Steccone*, 205 F.2d 244, 249 (9th Cir. 1953); *McKinney v. Boyle*, 447 F.2d 1091, 1093 (9th Cir. 1971). *See also* Opening Brief, at 41-44 (citing numerous cases where courts permitted longer delays).

The School District provided reasons for the interval, which Plaintiffs' Answer ignores. *Compare* Opening Br., at 47 (providing reasons for delay); *with* Appellee Br., at 31 (alleging the motion was filed "without *any* justification") (emphasis in original).

Plaintiffs state that relief from a judgment is more appropriate when there is a need for an "extraordinary remedy." Appellee Br., at 28. Supreme Court precedent counsels that such a situation exists here. In the present matter, there is a permanent injunction that operates as a prior restraint on speech that exists in perpetuity. A limited public forum is a forum in which the government opens a non-public forum but limits it to certain groups of speech. *See Flint v. Dennison*, 488 F.3d 816, 832 (9th Cir. 2007). When a government opens parts of its meetings for public speech, it creates a limited public forum. *See City of Madison v. Wisconsin Employment Relat. Comm.,* 429 U.S. 167, 178–79) (Brennan, J., concurring); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 470 (2009); *Good News Club v. Milford Central School*, 533 U.S. 98, 106–107 (2001). Here, the District opened a limited or a non-public forum to allow the public to speak to solemnize the proceedings. (3-EOR-393-395).

No matter if you consider the prayers here as private speech or public speech, the net result is the same: *it involves speech.* Just because that speech was religious, does not mean it ceased to be speech. As such, the permanent injunction serves as a prior restraint on speech that exists in perpetuity. Now that the legal precedent upon which this permanent injunction was based has been reversed, these circumstances warrant relief from this permanent order. *See, e.g., Elrod v. Burns,* 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")

**B.      Plaintiffs Have Shown No Harm**

In addition to the time interval being reasonable, Plaintiffs have not cited any actual legally justifiable reliance interest on the prior judgement. Plaintiffs rely on *Henson v. Fidelity Nat'l Financial, Inc.*, 943 F.3d 434 (9th Cir. 2019) in their argument that a motion should be denied when a plaintiff "change[s] his legal position in reliance on that judgement." Appellee Br., at 27–28. They then emphasized that this is likely the most important factor. *Id.* at 28.

However, *Henson* undermines their claims. The court in *Henson* differentiated circumstances that justified finality from those that did not. The court stated judgements that conveyed land from Party A to Party B, after which Party B "enters the land and installs pipes and appurtenances" constituted a legally justifiable reliance interest. 943 F.3d at 451 (citations omitted). Likewise, where a criminal defendant receives a new trial, the charge is dismissed, and he gains his freedom, to put him back in custody would "disturb" his reliance on his newfound freedom to say the least. *Id.* (citations omitted). Conversely, if the reopening of a case will not disturb "past effects" of the judgment, and parties could pick up where they left off, there is no legally justifiable interest in finality. *Id.*

Plaintiffs can point to no actual reliance on the judgement, nor can they as this case that involves the prior restraint of speech. This case would not require Plaintiffs to tear down a building, forfeit an interest in property, or be torn away from their wife, children, family, and freedom. The only thing that Plaintiffs have to lose is the merits of this case—and there is no legally justifiable interest in an unconstitutional permanent injunctive order.

Plaintiffs only attempt to argue case-specific prejudice is that they "ended their retention of their former counsel." Appellee Br., at 28–29. Plaintiffs cite no caselaw that this is a justifiable interest. Regardless, considering the facts of this

case, this argument bears no weight. Plaintiffs do not say when this retention ended. An important fact because, if the retention ended the day that the lower court's order became final—then Plaintiffs could argue that they were prejudiced even if Defendant filed their Rule 60 motion the very day the case became final.

Furthermore, this is not a complex case with numerous issues such that former counsel is naturally better positioned to defend against a Rule 60 Motion. This Motion is not fact-intensive by any measure—it simply asks whether prayer before school board meetings accords with our country's history and traditions. All of the relevant facts are contained in the closed appellate record and two court decisions (one from the District Court and one from the 9th Circuit). Plaintiffs do not allege their current lawyers are unable to adequately represent them. Their argument relies entirely on the fact that new counsel "had to familiarize themselves with this long-running case." Appellee Br., at 29. Prior counsel would have had to have done the same—this is not legally justifiable reliance. This case was simple, based on a complete appellate record and involved filing two briefs (opposition below and answering brief before this Court). Plaintiffs have made no *actual* showing of prejudice.

Plaintiffs state that they have an interest in finality due to "the length of the prior litigation." Response, at 28. Plaintiff states that its rights were infringed during the five years litigation was taking place. *Id*. But, if the injunction is permitted to stand after the law upon which it was based was overturned, Defendant's rights *will be infringed forever* by the permanent injunction that will last *in perpetuity*.

## C.     The Court Below Erred By Applying An "Exact Analogue Test"

The permanent injunctive order in this case was entered after the previous courts rejected applying the historical test, finding differences between legislative prayers and school board prayers. But Supreme Court precent doesn't require finding

11

an *exact analogue* in history before an act is found to be constitutional. Rather, the historical test asks whether the conduct in question is consistent with this nation's history. *See Kennedy v. Bremerton School District*, 597 U.S. 507, 535-36 (2022); *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 24 (2022).

The District Court first applied the exact historical analog test to determine that there were differences between school board meetings and legislative body meetings. (1-EOR-69-71). Then the court applied *Lemon* to hold that the prayers failed the purpose and endorsement prongs of *Lemon.* (1-EOR-70-72).

The Ninth Circuit followed the same formula. The Court first said,

> Upon undertaking this analysis, we find that the practice of prayer at Chino Valley Board meetings does not "fit[ ] within the tradition long followed in Congress and the state legislatures." *See Town of Greece*, 134 S.Ct. at 1819. The audience and timing of the prayers, as well as the religious preaching at the Board meetings, diverge from the legislative-prayer tradition; and the history of the legislative-prayer tradition is inapplicable to a public school board. We therefore conclude that the *Marsh-Greece* exception does not control or govern our analysis.

*Freedom from Religion Found. V. Chino Valley Unified Sch. Dist.*, 896 F.3d 1132, 1144-45. Just like the lower court did, the Ninth Circuit then applied *Lemon* in upholding the injunction. *See id*.

Neither court applied the correct historical test, which is to ask whether opening a school board meeting with a prayer is consistent with the history and traditions of the United States. An exact historical analogue is not needed.

In denying the School District's Rule 60 Motion, the court below said that the Supreme Court's decision in *Kennedy* doesn't change the outcome.

> Nothing in *Kennedy* persuades this Court that the Supreme Court intended to overrule its line of school prayer cases banning "prayer involving public school students" that is

12

> "problematically coercive." *See Kennedy*, 597 U.S. at 541-42.
>
> To the extent that Defendants try and argue that an analysis of history should change the outcome, *Kennedy* already controls this Court's historical analysis. (Mot. at 13-20.) The Supreme Court noted that it "has long held that government may not, consistent with a historically sensitive understanding of the Establishment Clause, 'make a religious observance compulsory.'" *Kennedy*, 59 U.S. at 536-37 (emphasis added) (citing *Zorach v. Clauson*, 343 U.S. 306, 314 (1952)).

(1-EOR-7).

But the facts and the Court's reasoning in *Kennedy* belie the District Court's conclusion. Here, the previous courts have tried to distinguish these prayers from legislative prayers because kids are present. In fact, the heart of Plaintiffs' argument is that because students might witness the prayers, they will be coerced into praying. But the Supreme Court specifically rejected the premise of the presence of students as the same thing as coercion. Responding to the District arguments that it had to adopt a rule to stop the prayers otherwise students might be coerced to pray, the Court said:

> It is a rule that would defy this Court's traditional understanding that permitting private speech is not the same thing as coercing others to participate in it. *See Town of Greece*, 572 U.S. at 589, 134 S.Ct. 1811 (plurality opinion). It is a rule, too, that would undermine a long constitutional tradition under which learning how to tolerate diverse expressive activities has always been "part of learning how to live in a pluralistic society." *Lee*, 505 U.S. at 590, 112 S.Ct. 2649. We are aware of no historically sound understanding of the Establishment Clause that begins to "mak[e] it necessary for government to be hostile to religion" in this way. *Zorach*, 343 U.S. at 314, 72 S.Ct. 679.

*Id.* at 541.

13

The Court said, "learning how to tolerate speech or prayer of all kinds is "part of learning how to live in a pluralistic society," a trait of character essential to "a tolerant citizenry." *Kennedy*, at 538 (citing *Lee*, 505 U.S. at 590, 112 S.Ct. 2649).

> This Court has long recognized as well that "secondary school students are mature enough ... to understand that a school does not endorse," let alone coerce them to participate in, "speech that it merely permits on a nondiscriminatory basis." *Mergens*, 496 U.S. at 250, 110 S.Ct. 2356 (plurality opinion). Of course, some will take offense to certain forms of speech or prayer they are sure to encounter in a society where those activities enjoy such robust constitutional protection. But "[o]ffense ... does not equate to coercion." *Town of Greece*, 572 U.S. at 589, 134 S.Ct. 1811 (plurality opinion).

*Id*. at 538-39.

The Court's citation to *Town of Greece v. Galloway,* in a high school football game prayer situation is highly instructive. In *Town of Greece*, the meetings were opened with a member from the public giving an invocation. This is just like the current situation where school board meetings were opened with a prayer from the public. (3-EOR-393-395). The purpose of the invocations is to "solemnize the proceedings", same as in *Greece.* (3-EOR-393). And just like in *Greece,* "No member of the Board of Education or District employee or any other person in attendance at the meeting shall be required to participate in any prayer that is offered." *Id*. Yet in this context, the Court cited *Town of Greece* to say that mere exposure to the prayer delivered in this context was not coercive. *Kennedy*, 597 U.S. at 539.

The facts of *Kennedy* underscore even more how mere exposure to religious expression is not coercive. In *Kennedy,* the prayer times included Coach Kennedy praying with his students during the prayer (at one point, most of the team joined in on the prayers), opposing teams joining in the prayers, leading locker room prayers

14

and devotionals, and resulted in members of the public joining in the prayers. *See Kennedy*, 597 U.S. at 515, 539.

Yet despite this history of robust involvement between Coach Kennedy, his official duties, and prayers, the Court rejected the idea that the prayers were coercive just because students were present.

### III. THE PROPER TEST ASKS WHETHER THE CONDUCT IS CONSISTENT WITH HISTORY

The Supreme Court has transitioned away from applying tiers of scrutiny and focuses its consideration on whether a practice is supported by history and tradition. *See e.g. Kennedy*, 597 U.S. at 507; *District of Columbia v. Heller*, 554 U.S. 570 (2008); *New York State Rifle & Pistol Assoc. v. Bruen*, 597 U.S. 1, 24 (2022); *United States v. Rahimi*, 602 U.S. 680, 706 (2024) (Sotomayor, J., concurring).

In *Bruen* the Court laid forth the history and tradition test, albeit in the Second Amendment context, stating that when the Constitutional provision's plain text covers the at-issue conduct, the government can then justify the regulation by demonstrating it is consistent with the Nation's historical tradition related to the right. *See* 597 U.S. at 24; *see also Rahimi*, 602 U.S. at 708 (Gorsuch, j., concurring) (noting "text and history" dictate the contours of a Constitutional right.) The Court discussed Free Speech, noting that speech may not be protected when it falls outside the category of protected speech as demonstrated by "*historical* evidence." *Id*. at 24–25 (emphasis in original).

A court must consider what societal issue is sought to be dealt with by the rule at issue and consider whether, historically, the issue was dealt with in the same way. *Bruen*, 597 U.S. at 26–27. If, historically, the issue was dealt with through materially different means, that can be evidence the modern rule is unconstitutional. *Id*. There is still some debate over what time period should be primarily considered. *Id*. at 38

15

(discussing the debate regarding whether to consider the time of the Founding Fathers or incorporation) (citing A. Amar, The Bill of Rights: Creation and Reconstruction xiv, 223, 243 (1998)). The Court applies an "analogue" test to consider whether a historical regulation is a "proper analogue" for modern regulations. *Id.* at 28–29. The analogue does not need to be exact, rather, it must simply be "relevantly similar." *Id.* at 29 (citation omitted). The test is neither a "straitjacket nor a [] blank check." *Id.* at 30. Reliance on history is important, but it cannot be too rigid. *See Rahimi,* 602 U.S. at 708.

- Here, Plaintiffs are *concerned* that Defendant's desired policy of a solemnizing prayer risks violating the Establishment clause. *See e.g.* Appellee Br., at 2. As argued in Defendant's opening brief, history demonstrates that our country has, historically, not found solemnizing prayer before a government function to violate the Establishment Clause. This is also demonstrated in several of the early states records:[2]

- **Pennsylvania**: *Second Annual Report of the Controllers of the Public Schools of the First* School *Di*strict of the State of Pennsylvania, Philadelphia: Board of Control (2d ed. 1820) (demonstrating prayer in minutes of school meetings in 1820 Pennsylvania);

- Massachusetts: The Common School Journal for the Year 1845, Volume VII, Edited by Horace Mann, Secretary of the Massachusetts; Triumph of Equal School Rights in Boston: Proceedings of the Presentation Meeting held in Boston, Dec. 17, 1855 (1856), Board of Education, Boston: William B. Fowle and N. Capen (1845) (both demonstrating that analogous prayer was not considered violative of the Constitution in Massachusetts in the late 1800's);

- Missouri: Sixth Annual Report of the Superintendent and Secretary to the Board of St. Louis Public Schools, St. Louis: E.P. Stedley and Co., Printers (1860);

---

[2] These examples were discussed in the Family Research Council's and Lousisana Family Forum's joint brief of amici for *Doe v. Tangipahoa Parish School Board*, 2007 WL 2735330 (5th Cir. 2007).

16

- North Carolina: A History of the Public Schools of North Carolina, M.C.S. Noble, Chapel Hill: The University of North Carolina Press (1930);

- Wisconsin: *Proceedings of the Board of Regents of Normal Schools and the Regulations Adopted at Their* First Meeting Held at Madison, July 5, 1875, Madison: Atwood & Rublee (1857) (discussing how meetings were opened with prayer);

- Michigan: Rosalita, Sister Mary, Education in Detroit Prior to 1850, Lansing: Michigan Historical Commission (1928), 323 (noting how clergy spoke from pulpit at comparable meetings to raise awareness for schools);

- New York: Statutes of the State of New York Relating to Common Schools, Albany: C. Van Benthuysen (1847) (statute number 31 notes that school related powers were held by each town's trustees of the Gospels and school lots).

Offering up an invocation before School Board meetings is consistent with the history and tradition of the United States. It does not matter that there are differences between school board meetings and meetings of legislative bodies. The similarities suggest that the founders would not have viewed opening a meeting with an invocation to be coercive or an Establishment Clause violation.

Plaintiffs quibble with some of the citations of the historical prayers. Yet the history books and case law are replete with examples of public meetings being opened with an invocation. *See, e.g., Marsh v. Chambers*, 463 U.S. 783 at 792; *Town of Greece*, 572 U.S. at 575; J. Ross Browne, *Report of the Debates in the Convention of California, on the Formation of the State Constitution, in September and October, 1849* (J.T. Towers 1850) (noting that an invocation was given by Rev. Samuel H. Willey at the opening of the California Constitutional Convention on September 4, 1849, in Monterey); *Proceedings of the First State Conv. of the Col. Citizens of the State of California* (Democratic State Journal Print 1855), at 5, 6, 9, 11, 17 (during the First State Convention of the Col. Citizens of the State of California, held in

17

Sacramento, October 25–28, 1865, the official printed proceedings noted that prayer opened every single session of the four-day convention); *Napa County Teachers' Institute Proceedings*, *The California Teacher*, July 1870, at 1–5 (noting that during the Napa County Teachers' Institute, in Napa City, California, May 31–June 3, 1870, the official proceedings published in the state journal of the California Teachers Association record the following verbatim entries: First Day, May 31: "Exercises opened with prayer and singing, " Second Day, June 1: "Exercises were opened with music, and prayer by the Rev. Mr. Treferen," Third Day, June 2, Morning: "The exercises were opened with music and prayer," Third Day, June 2, Evening: "opened with music and prayer," Fourth Day, June 3: "Exercises were opened with music and prayer."); *Siskiyou County Teachers' Institute Proceedings*, *The California Teacher*, July 1871, at 14, 18, 48–49 (noting that the official record of the California Teacher, the official journal of the California Teachers Association, a state-sponsored body operating under the State Superintendent of Public Instruction, noted that the Siskiyou County Institute proceedings for 1871 opened with an invocation on three consecutive days of sessions.

Plaintiffs have offered no evidence that rebuts the history and tradition in the United States of public meetings being opened with an invocation.

Plaintiffs argue that on some occasions, School Board members made comments that might be constitutionally problematic due to their religious overtones. *See* Appellee Br., 7-9. But Plaintiffs failed to also point out that after those comments were made, the School District adopted a policy banning any proselytizing speech by School Board members while acting in their capacities as School Board members. (2-EOR-102). The policy states, "When acting in their official capacities and when speaking on behalf of the District, Board members shall not proselytize and shall be neutral towards religion and/or non-religion." *Id.* Any

18

problematic past religious conduct didn't dissuade the Supreme Court from concluding that the prayers offered by Coach Kennedy were not coercive. And likewise, any statements that were made in the past here, especially before the policy was enacted, are not constitutionally coercive.

### IV. CONCLUSION

The Permanent Injunctive Order is a prior restraint on speech that will last in perpetuity. The law upon which it was based, the *Lemon* test, has now been overturned by the U.S. Supreme Court. The new test is a historical test. The historical test is not an "exact analogue" test that requires the challenged practice to find an exact match in history. Rather, it asks whether the conduct in question is consistent with the history and traditions of the United States. Opening a school board meeting with prayer is consistent with the history and traditions of the United States. As the Supreme Court said in *Kennedy*, the fact that students are present is not coercive to force them to participate in the invocation. Does this mean that a student has to join in the prayer? No. Just like in *Kennedy* and in *Town of Greece*, the person who doesn't want to participate in the prayer has many options, from sitting there and just not participating, asking for it not to be done at a certain meeting when an objector might attend, showing up to the meeting after the invocation, or a myriad of other options. But silencing the invocations in perpetuity is hostile to religion, not supported by case law, and is inconsistent with our history and traditions.

Dated: April 27, 2026

/s/ Joel Oster
Joel Oster

19

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) and 9th Cir. Rule 27-1(d). This document is proportionally spaced and, not counting the items excluded from the length by Fed. R. App. P. 32(f), contains 4,390 words.

This document complies with the type-case requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

/s/ Joel Oster
Joel Oster

20

**CERTIFICATE OF SERVICE**

I certify that on April 27, 2026, this document was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Ninth Circuit. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Joel Oster
Joel Oster